### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

.                                                                                      .

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| CONSOLIDATED BEDDING, INC., | ) Case No. 09-11875 (BLS) |
| et al., | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |
| | ) |
| _____ | ) |
| | ) |
| JARED AZZATA, ALAN | ) |
| DAMBRAUSKAS, EDWARD | ) |
| SCHNEIDER and DAVID JONES, | ) |
| on their own behalf and on | ) |
| behalf of all other persons | ) Adversary No. 09-51936 (BLS) |
| similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| AMERICAN BEDDING INDUSTRIES, | ) |
| INC., CONSOLIDATED BEDDING, | ) |
| INC., SPRING AIR PARTNERS - | ) |
| CALIFORNIA, INC., SPRING AIR | ) |
| PARTNERS - TEXAS, INC., and | ) |
| AMERICAN CAPITAL STRATEGIES, | ) |
| LTD., | ) |
| | ) Re: Docket Nos. 57 and 63 |
| Defendants. | ) |
| _____ | ) |

James E. Huggett                          Christopher P. Simon
Margolis Edelstein                        Patrick M. Brannigan
750 Shipyard Drive                        Cross & Simon, LLC
Suite 102                                 913 N. Market St., 11th Floor
Wilmington, DE 19801                      P.O. Box 1380
                                          Wilmington, DE 19899
Stuart J. Miller
Lankenau & Miller, LLP
132 Nassau St., Suite 423
New York, NY 10038

Mary E. Olsen                    Justin S. Antonipillai
M. Vance McCrary                 Robert A. Stolworthy, Jr.
J. Cecil Gardner                 Arnold & Porter LLP
The Gardner Firm, P.C.           555 Twelfth St., N.W.
210 S. Washington Ave.           Washington, DC 20004
Mobile, Alabama 36602

*Counsel for Plaintiffs,*          *Counsel for Defendant,*
*Jared Azzata, Alan Dambrauskas,*  *American Capital, Ltd.*
*Edward Schneider and David Jones*

<u>**OPINION**</u>[1]

Before the Court is a motion to dismiss (the "Motion")

[Docket No. 57] filed by defendant American Capital Strategies,

Ltd. ("Defendant" or "American Capital").  For the following

reasons, the Court will grant the Motion and dismiss the

Complaint with prejudice with regard to Defendant.

## I.    <u>BACKGROUND</u>

This adversary proceeding is an action by Jared Azzata,

Alan Dambrauskas, Edward Schneider, and David Jones (the

"Plaintiffs"), as class action plaintiffs, to recover damages on

account of alleged violations of the Worker Adjustment and

Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN

Act") and its California counterpart, California Labor Code §§

1400-1408.  Plaintiffs were employees at four mattress

manufacturing facilities (the "Facilities") owned and operated

---

[1]    "The court is not required to state findings or
conclusions when ruling on a motion under Rule 12 . . .
." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein
makes no findings of fact or conclusions of law pursuant to Rule
7052 of the Federal Rules of Bankruptcy Procedure.

by various affiliates of defendant Consolidated Bedding, Inc.
("Consolidated").  Consolidated was created as a part of a 2005
transaction where defendant American Bedding Industries, Inc.
("American Bedding") merged with Spring Air Partners – North
America, Inc. ("SAPNA").  Prior to the merger, SAPNA owned
defendants Spring Air Partners – California ("California Spring
Air") and Spring Air Partners – Texas ("Texas Spring Air").
These Spring Air companies operated the Facilities to
manufacture and sell mattresses with the "Spring Air" name under
licenses granted by the Spring Air Company ("Spring Air Co.",
together with Consolidated, SAPNA, American Bedding, California
Spring Air, and Texas Spring Air, the "Debtors").

American Capital is a publicly traded private equity firm
with $13 billion in capital resources under management.
American Capital became involved with the Debtors when it
partnered with H.I.G. Capital in 2007 to finance the
consolidation of Spring Air Co. and Consolidated.  At that time,
American Capital invested $160,000,000 in Consolidated through a
senior loan and junior PIK notes.  A year later, American
Capital and H.I.G. Capital invested an additional $22,000,000 in
Consolidated and Spring Air Co. to launch a new product line.
H.I.G. Capital later divested itself of its interest in
Consolidated and Spring Air Co., leaving American Capital as the
Debtors' lead financier and equity holder.

American Capital utilizes "Operations Teams" to work directly with its portfolio companies to reduce costs and improve performance.  William Byers, Michael Michienzi, and Craig Moore were American Capital employees assigned as the Spring Air Operations Team.  The Spring Air Operations Team members plus Bowen Diehl (together, the "AmCap Directors"), also an American Capital employee, served on the board of directors for American Bedding, Consolidated, California Spring Air and Texas Spring Air.  Each of these Debtors' boards of directors had five seats total, four of which were occupied by American Capital employees.

These boards of directors authorized the May 5, 2009 closing of the Facilities and termination of the Plaintiffs and other employees at the Facilities.  It is undisputed that the Plaintiffs were not provided sixty days advance notice of the Facilities' closing.  This failure to notify forms the basis for Plaintiffs' WARN Act claims.

Following closure of the Facilities, on May 29, 2009, the Debtors and certain affiliated businesses filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code. Alfred T. Guiliano (the "Trustee") was appointed as the Chapter 7 trustee of the Debtors' estates.

On August 12, 2009, Plaintiffs initiated this adversary proceeding by filing a complaint [Docket No. 1] asserting that

4

the Debtors and American Capital were liable for violations of
the WARN Act and its California counterpart.  The Trustee
responded by filing an answer and motion for judgment on the
pleadings [Docket Nos. 9, 15].  American Capital filed a motion
to dismiss [Docket No. 4].

Thereafter, Plaintiffs filed a motion seeking leave to
amend the complaint (the "Amendment Motion") [Docket No. 26].
The Trustee and American Capital objected (the "Amendment
Objections") [Docket Nos. 32, 33] arguing that, <u>inter alia</u>,
amendment would be futile because the amended complaint failed
to state a claim under Fed. R. Civ. P. 12(b)(6).  On December
11, 2009, the Court entered an Order (the "Amendment Order")
granting Plaintiffs leave to amend their complaint, and, on
December 15, 2009, Plaintiffs filed their amended complaint (the
"Complaint") [Docket No. 51].

The Trustee then answered the Complaint [Docket No. 56] and
American Capital filed the Motion seeking to dismiss all of the
claims against it.  Plaintiffs filed a response to the Motion
[Docket No. 60] and American Capital followed with a reply
[Docket No. 62].  American Capital has requested that the Court
hear oral argument on the Motion [Docket No. 63].  The Court
declines the request for oral argument and will decide the
matter on the parties' written submissions.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## III. STANDARD OF REVIEW

Defendant seeks dismissal of the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  A court's fundamental inquiry in the Rule 12(b)(6) context is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by, Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

To decide a motion to dismiss, a court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff."  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  In addition, all

reasonable inferences are drawn in favor of the plaintiff.
Kost, 1 F.3d at 183.

Following the Supreme Court's recent rulings on Rule
12(b)(6) in Twombly and Ashcroft v. Iqbal, 129 S. Ct. 1937
(2009), the Third Circuit recognized that reviewing a Rule
12(b)(6) motion requires a two-part analysis.  Fowler v. UPMC
Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  First, a court
should separate the factual and legal elements of a claim,
accepting the facts and disregarding the legal conclusions. Id.
at 210-11.  Second, a court should determine whether the
remaining well-pled facts sufficiently show that the plaintiff
"has a plausible claim for relief." Id. at 211 (internal
quotations omitted).  Put another way:

> [S]tating ... a claim requires a complaint
> with enough factual matter (taken as true)
> to suggest the required element.  This does
> not impose a probability requirement at the
> pleading stage, but instead simply calls for
> enough  facts  to  raise  a  reasonable
> expectation  that  discovery  will  reveal
> evidence of the necessary element.

Phillips, 515 F.3d at 234 (internal quotations omitted)
(citations omitted).  These standards govern the Motion.

## IV.  THE PARTIES' POSITIONS

### A.  Defendant's Position

Defendant argues that the Complaint should be dismissed
because Plaintiffs have not and cannot plead facts sufficient to

state a claim against Defendant under the WARN Act or its

California counterpart.[2]  Defendant asserts that, as a private

equity fund with investments in the Debtors, it did not employ

Plaintiffs and cannot be considered a "single employer" with the

Debtors for purposes of WARN Act liability.  In the Third

Circuit, the "single employer" test for lender liability under

the WARN Act requires consideration of five factors laid out in

Pearson v. Component Tech. Corp., 247 F.3d 471 (3d Cir. 2001).

Defendant argues that Plaintiffs have alleged facts that, at

best, may support two of the five Pearson factors (common

ownership and common officer/directors), but that, as a matter

of law, these two factors are not sufficient to state a claim

for WARN Act lender liability.  Def.'s Br. 2.

    Defendant argues that the sole fact Plaintiffs allege with

regard to the third Pearson factor (de facto control) is that

Defendant's employees sat on the Debtors' boards of directors.

Defendant contends that this sole fact is insufficient to show

de facto control and more particularized fact pleading is

necessary to withstand Rule 12(b)(6) scrutiny.

    Defendant posits that Plaintiff has pled no facts showing

that Defendant was part of an integrated enterprise with the

---

[2]    Defendant alleges that if Plaintiffs fail to state a
federal WARN Act claim, this Court lacks jurisdiction to
entertain Plaintiffs' claims under the California Labor Code §§
1400-1408.  Def.'s Br. 15 n.6.

Debtors or took actions beyond those necessitated by its need to prudently monitor its investment in the Debtors.

Defendant further argues that Plaintiffs have not and cannot plead facts regarding the remaining <u>Pearson</u> factors (unity of personnel policies and common operations).

In response to Plaintiffs' argument that by the Amendment Order this Court has already determined that the Complaint withstands Rule 12(b)(6), Defendant argues that a court's rejection of a party's argument in the context of amending a complaint is not dispositive of whether Rule 12(b)(6) has been satisfied.

## B.   **Plaintiffs' Position**

Plaintiffs first argue that the Amendment Order constitutes an advance ruling from this Court that the Complaint sufficiently states a claim under Rule 12(b)(6).  Pl.s' Br. 1-2. Plaintiffs contend that American Capital's sole objection to the Amendment Motion was that leave should be denied as futile because the Complaint could not withstand Rule 12(b)(6) scrutiny.   Therefore, argues Plaintiffs, because the Court overruled the Amendment Objections and allowed Plaintiffs to amend, the Court has already pre-determined that the Motion should be denied.  Pl.s' Br. 2.

Plaintiffs also argue that they have pled sufficient facts for this Court to find American Capital liable under the WARN

Act and its California counterpart based on a single employer
theory.[3]  Plaintiffs argue that it is undisputed that the first
two <u>Pearson</u> factors – common director/officers and common
ownership- are met.  Plaintiffs then focus on <u>Pearson</u>'s <u>de facto</u>
control factor and assert that the Complaint contains sufficient
facts to demonstrate that American Capital "disregarded the
separate legal personality of the Debtors in directing the mass
layoff at or plant closures of each facility at issue."  Pl.s'
Br. 6.  Last, Plaintiffs argue that <u>Pearson</u>'s "unity of
personnel policies" factor is met by the Complaint's allegation
that Defendant's employees who sat on the Debtors' boards of
directors ordered the Debtors to close the Facilities.  Pl.s'
Br. 8.  As the Complaint pleads sufficient facts related to many
<u>Pearson</u> factors, argues Plaintiffs, the Motion should be denied.

## V.   <u>DISCUSSION</u>

The WARN Act, as its acronym suggests, requires that
certain employers provide workers sixty days advance notice of
plant closings and mass layoffs and provides certain remedies if
notice is not given.  <u>See</u> 29 U.S.C. §§ 2101-2109.  As was the
case here, a plant's closure is often the result of a
corporation's insolvency or close of business, which may inhibit

---

[3]      Plaintiffs have not disputed Defendant's argument that
this Court lacks jurisdiction to entertain Plaintiffs' claims
under the California Labor Code §§ 1400-1408 if this Court finds
that Plaintiffs have failed to state a federal WARN Act claim.

workers from recovering WARN Act damages against the insolvent
or dissolving corporation.  As a result, WARN Act plaintiffs
have pursued a variety of entities related to their direct
employer, including parent corporations and lenders, on the
theory that the related entities actually controlled the
employer and should be treated as an employer for WARN Act
purposes.  The WARN Act itself does not specifically address
this situation.  The Third Circuit, however, has considered WARN
Act liability for lenders and parent corporations.  Pearson v.
Component Tech. Corp., 247 F.3d 471; In re APA Transp. Corp.
Consol. Litig., 541 F.3d 233, 242-43 (3d Cir. 2008), cert.
denied, 129 S. Ct. 1670 (2009).

    In Pearson, the Third Circuit affirmed summary judgment in
favor of a lender on account of WARN Act claims asserted by the
lender's borrower's employees following a plant closure. 247
F.3d at 478.  The lender, GECC, made a loan to the direct
employer, CompTech, and received pledge agreements for the stock
of CompTech and two affiliated companies as security for the
loan.  Id.  The pledge agreements included a right to vote the
stock in the event of default.  Id.  Following a default, GECC
exercised its voting rights and installed a new board of
directors at CompTech and the two affiliates.  Id. at 479.  The
new boards hired new officers and GECC selected the companies'
new joint CEO, who was under contract with and indemnified by

GECC.  Id.  GECC subsequently replaced the CEO at its sole
discretion and hired an industry consultant to work with the
companies.  Id.

Despite these facts and other direct evidence that the
companies' officers were prepared to follow GECC's directives in
making business decisions, the court determined that "GECC had
no formal authority to control CompTech's business decisions."
Id. at 481.

The court went on to adopt the factors specified in a
Department of Labor ("DOL") regulation regarding WARN Act claims
against independent contractors and subsidiaries.  Id. at 478.
Although the DOL regulation was originally promulgated to assist
courts in reviewing affiliated corporation WARN Act liability,
the court determined that "because the lines separating
'parents' from 'lenders' are not often bright ones, the
simple[st] approach is to apply the same test for liability
regardless of the formal label the corporations have attached to
their association."  Id.

The following factors therefore apply in both the parent
and lender WARN Act liability contexts in the Third Circuit: (i)
common ownership; (ii) common directors and/or officers; (iii)
de facto exercise of control; (iv) unity of personnel policies
emanating from a common source; and (v) dependency of
operations.  Id. at 495-96.  The factors are not exhaustive,

12

however, and "as with any balancing test, a number of circumstances not specifically enumerated may be relevant." <u>Id.</u> at 478. <u>Pearson</u> further instructs courts to "take a more fundamental approach to determining whether or not to pierce the veil under WARN by focusing on the nature and degree of control possessed by one corporation over another." <u>Id.</u> at 478.

## A. <u>Application of Rule 12(b)(6)</u>

Turning to the merits of the Motion, the two-part test set forth in <u>Fowler</u> requires that the Court first determine the factual and legal elements of Plaintiffs' claims and then sift the facts from the legal conclusions to determine if the facts entitled to an assumption of truth sufficiently support Plaintiffs' claims. 578 F.3d at 210.

1. *The Factual and Legal Elements of Plaintiffs' Claims*

As explained above, the legal elements of WARN Act lender liability are set forth in <u>Pearson</u>. As to the first <u>Pearson</u> factor, common ownership, Plaintiffs allege that following H.I.G. Capital's divestiture of its interest in the Debtors, "American Capital became the majority shareholder and/or majority equity holder and lead financial sponsor of [the Debtors]." Compl. ¶ 17. Defendant does not dispute common ownership.

As to the second factor, common officers or directors, Plaintiffs have not alleged that the AmCap Directors held

officer or director positions with the Debtors and American
Capital.  Instead, Plaintiffs allege that the AmCap Directors,
who are not alleged to be directors or officers of American
Capital, acted as agents of American Capital while sitting on
the Debtors' boards of directors.  Compl. ¶ 46.

As to the third factor, <u>de facto</u> control, Plaintiffs allege
that by virtue of the fact of the AmCap Directors' service on
the Debtors' boards of directors, American Capital exercised <u>de
facto</u> control over the Debtors.  Plaintiffs have not, however,
alleged facts showing that the AmCap Directors were wearing
their American Capital "hats" while making difficult decisions
for the Debtors to close the Facilities and file for bankruptcy.

As to the fourth factor, <u>Pearson</u> explains that determining
the unity of personnel policies emanating from a common source
is "targeted toward discerning whether the nominally separate
corporations actually functioned as a single entity with respect
to [personnel] policies on a regular, day-to-day basis."  <u>Id.</u> at
490.  <u>APA Transport</u> further explained that in reviewing the
unity of personnel policies factor, it is proper to consider
"whether the two companies in question engaged in centralized
hiring and firing, payment of wages, and personnel and benefits
recordkeeping."  <u>APA Transport</u>, 541 F.3d at 245.  Plaintiffs
have offered no facts supporting any of the considerations
specified by <u>APA Transport</u>.  Indeed, based the alleged facts

14

that American Capital is in the investment business and the
Debtors are in the mattress manufacturing business, it seems
unlikely that Plaintiffs could ever demonstrate an integration
of operations satisfying the unity of personnel policies factor.
Perhaps recognizing this obstacle, Plaintiffs instead argue that
the role American Capital played in the decision to close the
Facilities, via the AmCap Directors, is sufficient to meet
Pearson's unity of personnel policies factor.

Pearson recognized, however, that even if an officer of the
employer acts as the lender's agent and mandates the employer's
personnel policies on the lender's behalf, absent evidence that
the lender was interested in the policies or issued specific
directives to the officer, the factor was not satisfied.  Id. at
499.  Plaintiffs here have not pled facts showing (i) any
particularized interest by American Capital in the Debtors'
personnel policies, or (ii) any specific personnel policy
directives issued by American Capital to the Debtors' directors
or officers.

As to the final factor, dependency of operations, courts
generally consider the existence of agreements to share
administrative or purchasing services, exchanges of employees or
equipment and commingled finances.  Pearson at 500.  Plaintiffs
have not made any such allegations.

In sum, Plaintiffs' factual allegations entitled to an assumption of truth include that: (i) American Capital is the Debtors' majority equity holder and primary financial sponsor; (ii) as a general practice, American Capital establishes "Operations Teams" to assist its portfolio companies, such as the Debtors, with improving performance; and (iii) American Capital employees held the majority of seats on several of the Debtors' boards of directors.

The Complaint also summarily alleges that: (i) through the AmCap Directors, American Capital directed the Debtors to close the Facilities, file for bankruptcy and sell their property; (ii) through the AmCap Directors, American Capital appointed Katie Sems as an officer of the Debtors and hired bankruptcy counsel for the Debtors; and (iii) by these actions, American Capital exercised de facto control over the Debtors.  The Court considers these allegations to be legal conclusions or factually unsupported and therefore not entitled to an assumption of truth for present purposes.

2.   *Plaintiffs Have Not Alleged Facts*
     *Supporting a Plausible Claim for Relief.*

After determining the legal and factual elements of a claim and sifting out legal conclusions, the second part of Fowler's Rule 12(b)(6) test requires the Court to determine whether the remaining facts show that Plaintiffs "ha[ve] a plausible claim

for relief."   578 F.3d at 211.   <u>Pearson</u> requires two

corporations to be "highly integrated with respect to ownership

and operations" before being imposing single employer WARN Act

liability.  <u>Id.</u> at 505.   The court cautioned that WARN Act lender

liability may be particularly difficult to show because "even

total control of a delinquent borrower's business might well be

justified as an effort to protect collateral." <u>Id.</u> at 495.

Plaintiffs have alleged sufficient facts related to

<u>Pearson</u>'s first factor, common ownership, but have not alleged

facts sufficient to meet the remaining four factors.

Plaintiffs have alleged that the common director/officers

factor is met because the AmCap Directors were acting as agents

of American Capital.   Notably, the <u>Pearson</u> Court rejected a

similar argument as "misdirected" and instead focused the

inquiry on "whether some of the same individuals comprise . . .

the formal management team of each company." <u>Id.</u> at 498.

Plaintiffs have failed to allege sufficient facts from which the

Court can infer the presence of common directors or officers.[4]

---

[4]      Even if Plaintiffs had properly alleged common
directors/officers in addition to common ownership, based on the
Court's determinations regarding the remaining <u>Pearson</u> factors,
the Motion would still have been granted.   See <u>Pearson</u>, 578 F.3d
at 494 ("[O]wnership - and even ownership coupled with common
management - is not a sufficient basis for [WARN Act]
liability."). <u>See also</u>, <u>APA Transport</u>, 541 F.3d at 243
(reaffirming <u>Pearson</u>).

As to the third factor, de facto control, the Pearson Court warned that the factor could be problematic "because if read in isolation, it might well encourage the imposition of liability merely as a result of control ordinarily exercised by a parent corporation over a subsidiary by virtue of its ownership." Id. at 490. Although the court was "given pause by the extent of the lender's involvement in the decision to close the plant," id. at 504, the court ultimately balanced the factor in the lender's favor, noting that:

> we must be scrupulous in our efforts to distinguish between situations in which a parent/lender has ultimately assumed responsibility for the continuing viability of a company (thus incurring liability for WARN Act violations) and situations in which the borrower has retained the ultimate responsibility for keeping the company alive.

Id. at 505.

Here, Plaintiffs have pled facts showing that American Capital was the Debtors' primary financier and equity holder, and that American Capital employees who occupied seats on the Debtors' board of directors were involved in board decisions to close the Facilities and file for bankruptcy. From these facts alone, Plaintiffs ask this Court to infer that American Capital had de facto control over the Debtors and should have given the Debtors' employees notice under the WARN Act. The alleged facts are not sufficient to support this inference.

Plaintiffs argue that American Capital's role, through the
AmCap Directors, in the decision to close the Facilities is
sufficient to satisfy the fourth factor, unity of personnel
policies.  Leaving aside the Court's earlier determination that
Plaintiffs have failed to allege facts showing that the AmCap
Directors acted with their American Capital "hats" on, the
Plaintiffs' argument was explicitly considered and rejected in
Pearson.  Id. at 500.  There, the court found that the
allegations regarding lender involvement in the decision to
close a plant was "more appropriately considered as part of the
'de facto exercise of control' factor."  Id.

Finally, Plaintiffs have not alleged any facts supporting
Pearson's final factor, operational dependency.  Moreover, the
record before the Court does not contain other facts tending to
support the imposition of WARN Act liability on American
Capital.

To survive a motion to dismiss, factual allegations must be
more than consistent with liability, but must plausibly entitle
a party to relief. Iqbal, 129 S. Ct. at 1949.  Pearson clearly
requires a very high degree of integration between a lender and
an employer for WARN Act lender liability to arise.  247 F.3d at
497 ("[A] prerequisite for lender liability is that whatever
responsibility the lender may have assumed for the borrower's
business, such responsibility must have been for the "ordinary

operation" of the business."). Although American Capital

supervised much of the Debtors' activities and American Capital

employees occupied seats on the Debtors' boards of directors,

the Debtors at all times remained separate business entities

that did not rely on American Capital for day-to-day operations.

The properly alleged facts, viewed in a light most favorable to

Plaintiffs, do not provide a basis from which the Court can

infer the high degree of integration required under Pearson.

Accordingly, the Court will dismiss the Plaintiffs' WARN Act

claims against American Capital.[5]

The cases cited by Plaintiffs do little to aid their cause.

Plaintiffs cite Vogt v. Greenmarine Holding, LLC, 318 F. Supp.

2d 136 (S.D.N.Y. 2004) as an example of a court denying a motion

to dismiss WARN Act claims against a lender. The plaintiffs in

Vogt brought WARN Act claims against their former employer,

---

[5]      Although the Court has reviewed the Complaint with
regard to each of Pearson's factors and for additional support
to impose WARN Act liability, the Court has found the Pearson
test awkward and difficult to apply, as here, where the lender
and the employer operate in separate and drastically different
spheres. As recognized by courts in our sister circuits that
apply traditional principles of lender liability to WARN Act
claims, the DOL factors other than the de facto control factor
have "little direct bearing on the paradigmatic relationships
between lenders and borrowers." Coppola v. Bear Stearns & Co.,
Inc., 499 F.3d 144, 150 (2d Cir. 2007). These courts hold that
the more appropriate consideration for WARN Act lender liability
is "whether a creditor is exercising control over the debtor
beyond that necessary to recoup some or all of what is owed, and
is operating the debtor as the de facto owner of an on-going
business." Id.

Outboard Marine Corporation ("OMC"), a Chapter 11 debtor, and
eight investment companies.  Id. at 137.  The Vogt plaintiffs
alleged that the investment companies (i) controlled OMC's
capitalization; (ii) worked to reorganize OMC for several years
before the bankruptcy filing; (iii) made lay-off, plant closing,
and bankruptcy filing decisions; (iv) hired OMC's CEO and were
signatories to the CEO's employment contract; and (v) had
identical officers and directors to OMC.  Id. at 138-39.  The
plaintiffs further alleged that one investor's management
committee had identical membership to OMC's board of directors
and that the investor's management committee, in that role, made
the decision to close OMC.  Id.

    Vogt is clearly distinguishable as Plaintiffs here have not
alleged facts showing that the AmCap Directors made decisions
for the Debtors while acting as American Capital employees.  In
addition, Plaintiffs have not alleged that the AmCap Directors
were directors, officers, or members of a management team at
American Capital.  Plaintiffs' allegation that the AmCap
Directors were members of the Spring Air Operations Team does
not support an inference that the AmCap Directors held high-
level management roles at American Capital.  Plaintiffs have not
alleged other facts from which the Court could infer that the
AmCap Directors actively managed the Debtors, as was the case in
Vogt.  Plaintiffs have alleged that an officer of the Debtors,

Katie Sems, was chosen by American Capital.  However, unlike in
Vogt where the lender-chosen officer was under contract with the
lender, Plaintiffs here have not alleged that Ms. Sems was in
any way contractually obligated to or controlled by American
Capital.

Moreover, Vogt is a pre-Twombly case from a court not
constrained by the Third Circuit's decisions in Pearson and APA
Transport.  This Court is bound by different case law regarding
applicable standards under Rule 12(b)6) and WARN Act lender
liability, and finds Vogt to be of little help.

Plaintiffs' citation to Hiles v. Inoveris, LLC, et al.,
2:09-CV-00053-EAS-NMK (S.D. Ohio Nov. 4, 2009) is equally
unavailing because the case is distinguishable as a matter of
fact and law.  The plaintiffs there alleged that their employer,
Inoveris, was a wholly owned subsidiary of two related
investment companies that directly operated Inoveris's plant.
Id. at 2.  The court reviewed the alleged facts surrounding the
parent-subsidiary relationship, including the allegation that
the parents operated the plant prior to its closure, to
determine whether to dismiss a WARN Act complaint.  Id. at 3-4.
By contrast, the Complaint here alleges facts that show a
lender-borrower relationship and does not allege that American
Capital actually operated the Facilities.

Additionally, the _Inoveris_ Court followed pre-_Twombly_/_Iqbal_ case law, finding that questions regarding a parent company's control over its subsidiary should not be answered "until the [p]laintiffs have had some opportunity to conduct discovery on the matter." _Id._ at 4. The court also stated that "detailed factual allegations are not required, particularly where, as here, the defendants are in control of such information or it is otherwise unavailable to the plaintiffs." _Id._ at 4-5. These findings are at odds with the letter and spirit of _Twombly_, _Iqbal_, and _Fowler_ that "a complaint [will not] suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." _Iqbal_, 129 S. Ct. at 1949 (quoting _Twombly_, 550 U.S. at 557).

**B.    The Amendment Order Did Not Pre-Determine**
**That the Complaint Withstands Rule 12(b)(6)**

As a final issue, the Court is not persuaded by Plaintiffs' argument that by the Amendment Order, this Court pre-determined that the Complaint withstands Rule 12(b)(6) scrutiny. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "the court should freely give leave [to amend a complaint] when justice so requires." Leave may be denied if, _inter alia_, the court determines that amendment would be futile because the amended complaint fails to state a claim under Rule 12(b)(6). _Shane v. Fauver_, 213 F.3d 113, 115 (3d Cir. 2000).

Several courts, however, have recognized that it is preferable to freely allow amendment and subsequently consider Rule 12(b)(6) motions after full and focused briefing.  See Collins v. B/E Aerospace, Inc., 2010 WL 118334 at *2 (D. Kan. Jan. 5, 2010) ("The court's rejection of a defendant's argument in the context of plaintiff's motion to amend is not [a] definitive ruling on whether as a matter of law, plaintiff can bring a claim . . . .").  This Court agrees with Defendant that it may properly consider a motion to dismiss after allowing amendment of a complaint despite rejection of a party's futility argument at the amendment stage.[6]

## VI.    CONCLUSION

This Court will grant the Motion.  An appropriate Order follows.

By the Court,

Dated:  May 11, 2010

_____
Brendan Linehan Shannon
United States Bankruptcy Judge

---

[6]    In a similar context, this Court has previously ruled that an order granting a committee standing to file and prosecute estate causes of action does not necessarily insulate that complaint from attack by a motion to dismiss under Rule 12(b)(6).  See Official Comm. of Unsecured Creditors of Fedders, N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.), 405 B.R. 527 (Bankr. D. Del. 2009).